### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**JANE P. JIMENEZ,**

     **Claimant,**

**v.**              **Case No:  6:18-cv-510-Orl-37DCI**

**COMMISSIONER OF SOCIAL
SECURITY,**

     **Defendant.**

_____

### REPORT AND RECOMMENDATION

Jane P. Jimenez (Claimant) appeals the Commissioner of Social Security's final decision denying her application for disability benefits.  Doc. 1.  Claimant argues that the Administrative Law Judge (ALJ) improperly weighed the medical opinion evidence pertaining to her mental and physical impairments and erred in finding that she could perform other work in the national economy.  Doc. 19 at 20, 27.  Claimant contends that the record does not contain substantial evidence to support the ALJ's finding that she is not disabled.  *Id*. at 19.  Claimant requests that the Court reverse the decision and remand the case for further proceedings.  *Id*.  For the reasons set forth below, it is **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED**.

### I. PROCEDURAL HISTORY

This case stems from Claimant's application for a period of disability and disability insurance benefits.  Doc. 12-3 at 11; Doc. 19 at 1.  In October 2012, Claimant filed her application for social security disability and supplemental security income benefits.  Doc. 1.  On March 24, 2015, the ALJ found that she was not disabled within the meaning of the Social Security Act from March 30, 2009 through the date last insured.  *Id*.; R. 112-125.  The Appeals Council remanded the matter to the ALJ to further evaluate the Claimant's mental impairments in accordance with

the special technique described in 20 C.F.R. 404.1520a and give further consideration to the Claimant's maximum residual functional capacity.  R. 133-134.

On April 20, 2017, upon remand, the ALJ conducted a hearing at which Claimant and her attorney appeared.  R. 44-65.  Claimant alleged a disability onset of March 30, 2009.  R. 12.  Her date last insured was December 31, 2014.  *Id*.  The ALJ entered an unfavorable decision on May 8, 2017 and the Appeals Council denied Claimant's request for review on February 8, 2018.  R. 1-27.

## II.   THE ALJ'S DECISION

In the decision, the ALJ found that Claimant has the following severe impairments: affective disorder, thyroid disorder and drug and alcohol abuse.  R. 13.  The ALJ found that through the date last insured, Claimant did not have an impairment or combination of impairments that met or medically equaled any listed impairment.  *Id*.

The ALJ found that Claimant has the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c)[1] with the following specific limitations:

> She needed to avoid ladders and unprotected heights.  She needed to avoid the operation of heavy moving machinery.  She needed a low stress job with no production lines.  She needed simple tasks.  She needed to avoid contact with the public.  She needed to avoid contact with coworkers.  She needed tasks that did not require the assistance of others or require her to assist others in the performance of their tasks.

R. 14.  The ALJ found that Claimant did not engage in substantial gainful activity during the period from her alleged onset date (March 30, 2009) through her date last insured (December 31, 2014).  R. 12.  The ALJ found that through the date last insured, considering the Claimant's age, education,

---

[1]  Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. § 404.1567(c).

work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.  R. 25.  The ALJ found that Claimant was not disabled during the time period.  R. 26.

## III.   STANDARD OF REVIEW

The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards, and whether the Commissioner's findings of fact are supported by substantial evidence.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotations omitted).  The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm it if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

IV.    <u>ANALYSIS</u>

Issue No. 1:    **Whether the ALJ Properly Weighed the Medical Opinion Evidence[2]**

a. **The Weight the ALJ gave to the Medical Opinion Evidence Pertaining to Claimant's Mental Impairments**

Claimant contends that she is entitled to relief because the ALJ improperly weighed the medical opinion evidence relating to her mental impairments.  In doing so, Claimant referenced certain of the medical evidence and asserted in a conclusory manner that it preponderates against the ALJ's assessment of her mental impairments.  And while Claimant refers in general to her physicians' opinions, the crux of her argument appears to be that the ALJ improperly accorded "little weight" to the opinions of Dr. Zimmerman and Nurse Brooks.  *Id.*

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work.  *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."  *Lewis*, 125 F.3d at 1440.  The ALJ is responsible for determining the claimant's RFC.  20 C.F.R. § 404.1546(c).  In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining and non-examining medical sources.  *See* 20 C.F.R. § 404.1545(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012).[3]

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length,

---

[2] The parties identify the issues as Issue No. 1(a); 1(b); and Issue No. 2.  The issues are numbered in this Report accordingly.

[3] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization. 20 C.F.R. § 404.1527(c). A treating physician's opinion must be given controlling weight, unless good cause is shown to the contrary. 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179. There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: 1) the treating physician's opinion is not bolstered by the evidence; 2) the evidence supports a contrary finding; or 3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Winschel*, 631 F.3d at 1179. The ALJ must state the weight assigned to each medical opinion, and articulate the reasons supporting the weight assigned to each opinion. *Winschel*, 631 F.3d at 1179. The failure to state the weight with particularity or articulate the reasons in support of the weight prohibits the Court from determining whether the ultimate decision is rational and supported by substantial evidence. *Id*.

In relation to the opinions of Dr. Zimmerman and Nurse Brooks, the ALJ considered the evidence as follows:

> On January 26, 2012, the claimant completed a behavioral health questionnaire. The claimant said her occupation was housewife. The claimant denied having suicidal thoughts. She said her current stressors were money matters. The claimant met with Sandra Brooks, ARNP who noted that the claimant was well groomed and dressed. She was cooperative. Her mood and affect were anxious and hopeful. Her attention and insight were good. The nurse practitioner diagnosed the claimant with bipolar II and assigned a GAF score of 60.[4] (Ex. 11F). ***Some weight*** is accorded to this opinion from a treating source because the diagnosis and GAF score are consistent with the record as a whole, which shows that the claimant's symptoms are well controlled when she is compliant with treatment and abstinent

---

[4] "According to the DSM-IV-TR, a GAF score between 60-51 indicates moderate symptoms." R. 19, n. 4.

from drugs and alcohol.  See Exs. 10F, 12F, 13F.  This opinion is consistent with the record as a whole, which shows that the claimant's substance abuse is episodic and immaterial to a finding of disability.

***

On November 25, 2012, Sandra Brooks, ARNP and Raul Zimmerman, M.D. prepared a narrative report regarding the claimant.  The claimant had been seeing Ms. Brooks every six to eight weeks and reported that she was not drinking.  Ms. Brooks reported that the claimant had a history of an exacerbation in her symptoms of depression and hypomania when she experienced stress in her life.  Ms. Brooks wrote that the claimant reported "being unable to work due to difficulty dealing with the demands of the work environment."  Ms. Brooks opined that the claimant would have difficulty maintaining stability in any stressful fulltime work environment.  (Ex. 14F).  ***Little weight*** is accorded this opinion.  A review of the treatment records demonstrates that the claimant met with Ms. Brooks, not Dr. Zimmerman.  There is no evidence that Dr. Zimmerman treated the claimant.  This opinion is primarily based on the claimant's report that she experiences an exacerbation in her symptoms when she is under stress and that she cannot manage the stress of full time work.  The records from Ms. Brooks show that the claimant returned to New York to work at her business for a month, cared for her young grandchildren for three weeks, rode her bicycle for exercise, hosted a gathering at her home and participated in a library club.  These activities are inconsistent with the work preclusive limitations that Ms. Brooks reported.  Additionally, the claimant's work related difficulties were related to her attempts to manage a failing family business that was eventually managed by relatives, (Ex. 10F).  This opinion is inconsistent with the record as a whole that shows that the claimant's symptoms are generally well controlled.  See Exs. 10F, 12F, 13F.

Ms. Brooks completed a psychiatric/psychological impairment questionnaire.  Ms. Brooks wrote that the claimant was diagnosed with bipolar II disorder and had a GAF score between 55-60.[5]  Ms. Brooks said that the clinical findings included mood disturbance, emotional liability, decreased energy and manic syndrome.  Ms. Brooks wrote that the claimant's primary symptoms were insomnia, mood lability, irritability, anxiety, poor short-term memory and concentration and social isolation.  Ms. Brooks opined that the claimant had marked limitations in the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Ms. Brooks said that the claimant had marked limitations in the ability to respond appropriately to changes in the work setting and to set realistic goals and make plans independently.   Ms. Brooks wrote that the claimant experienced an exacerbation of symptoms during periods of change or stress.  Ms. Brooks wrote that the claimant denied experiencing side effects from Depakote and Neurontin.  However, the claimant said Seroquel, which she took at night, was sedating.  Ms. Brooks opined that the claimant was incapable of even a low stress

---

[5] "According to the DSM-IV-TR, a GAF score between 60-51 indicates moderate symptoms."  R. 20, n. 5.

position and would miss at least three days of work a month.  Dr. Zimmerman counter-signed the questionnaire.  (Ex. 14F).  *Some weight* is accorded to the GAF score between 55-60 because the record as a whole is consistent with a finding that the claimant's symptoms are only moderate.  However, *little weight* is accorded to the remainder of the opinion.  A review of the treatment records demonstrates that the claimant met with Ms. Brooks, not Dr. Zimmerman.  There is no evidence that Dr. Zimmerman treated the claimant.  This opinion is primarily based on the claimant's report that she experiences an exacerbation in her symptoms when she is under stress and that she cannot manage the stress of full time work.  The records from Ms. Brooks show that the claimant returned to New York to work at her business for a month, cared for her young grandchildren for three weeks, rode her bicycle for exercise, hosted a gathering at her home and participated in a library club.  These activities are inconsistent with the work preclusive limitations that Ms. Brooks reported.  Additionally, the claimant's work related difficulties were related to her attempts to manage a failing family business that was eventually managed by relatives, (Ex. 10F).  This opinion is inconsistent with the record as a whole that shows that the claimant's symptoms are generally well controlled.  See Exs. 10F, 12F, 13F.

***

On January 31, 2013, Ms. Brooks signed a form stating that the claimant was not abusing drugs or alcohol.  Ms. Brooks checked that the claimant's substance abuse was independent of her mental disorder.  On February 7, 2013, Dr. Zimmerman counter-signed the form.  (Ex. 16F).  *Some weight* is accorded to this opinion because the treatment records support a finding that the claimant's drug and alcohol abuse was sporadic.

***

On March 31, 2015, Sandra Brooks, ARNP wrote a letter on the claimant's behalf.  Ms. Brooks staid that she started treating the claimant on January 26, 2012.  She said she last saw the claimant on December 5, 2012.  Ms. Brooks wrote that she treated the claimant for bipolar II disorder with rapid cycles, chronic.  Ms. Brooks said the clinical findings included sleep and mood disturbance, emotional lability, past history of alcohol use, social withdrawal or isolation, manic syndrome, difficulty thinking or concentrating, hostility or irritability and suicidal ideation or attempts.  Ms. Brooks said the claimant was markedly limited in her ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and complete a normal workweek without interruptions from psychologically based symptoms.  Ms. Brooks opined that the claimant would likely decompensate if placed in a work setting.  Ms. Brooks opined that the claimant was incapable of tolerating even low stress work.  Ms. Brooks opined that the claimant would miss more than three days of work a month.  (Ex. 24F).  *Little weight* is accorded to this opinion from a treating source.  This opinion is based primarily on the claimant's reports to Ms. Brooks that she experienced an exacerbation in her symptoms when she was under stress and that she could not manage the stress of full time work.  The records from Ms. Brooks show that the claimant returned to New York to work at her business for a month, cared for her young grandchildren for three weeks, rode her bicycle for exercise, hosted a gathering at her house and

participated in a library club. These activities are inconsistent with the work preclusive limitations that Ms. Brooks reported. Additionally, the claimant's work related difficulties were related to her attempts to manage a failing family business that was eventually managed by relatives, (Ex. 10F). This opinion is inconsistent with the record as a whole that shows that the claimant's symptoms are generally well controlled. See Exs. 10F, 12F, 13F.

R. 19-22 (emphasis added).

Here, Claimant's argument relates to the foregoing opinions to which the ALJ assigned "little weight"; opinions that Claimant identifies as opinions of Dr. Zimmerman (as a treating physician)[6] and Nurse Brooks.[7] Thus, to summarize, the ALJ assigned little weight to certain opinions contained within (a) the November 25, 2012 Narrative Report containing the opinion of

---

[6] A preliminary question relevant to the Court's analysis, though, is whether Dr. Zimmerman was Claimant's treating physician; the ALJ explicitly found that he was not, Claimant argues as if he certainly was, and the Commissioner seems to concede that he was. On one hand, there is support in the record for the ALJ's finding that Dr. Zimmerman was not Claimant's treating physician. Specifically, the March 22, 2012, May 23, 2012, October 16, 2012 and November 12, 2012 progress reports are signed by Nurse Brooks as Claimant's provider (R. 936, 942, 943, 973); Claimant's labs are marked as reviewed by Nurse Brooks (R. 937, 938); the "tabulated results" state that Nurse Brooks was the requesting physician (R 939, 940); the January 26, 2012 Behavior Health Questionnaire is signed by Nurse Brooks as the interviewer (R. 948); and Nurse Brooks' November 25, 2012 Narrative Report provides that Claimant "first came to *me* on January 30, 2012 for continued treatment of her mental health condition." R. 975 (emphasis added). On the other hand, Dr. Zimmerman co-signed with Nurse Brooks both the Narrative Report (as "Collaborating M.D.") and the impairment questionnaire. R. 976, 984. But even assuming that Dr. Zimmerman is Claimant's treating physician, the undersigned finds that the ALJ did not err in assigning weight to the opinions at issue. Thus, the undersigned recommends that the Court not address this antecedent question directly, but simply assume (as Claimant alleges) that Dr. Zimmerman was a treating physician for purposes of this analysis and that the opinions he co-signed were the opinions of both Dr. Zimmerman (as treating physician) and Nurse Brooks.

[7] The undersigned notes that the ALJ gave more than "little weight" to Nurse Brooks' opinion regarding the January 26, 2012 questionnaire; the ALJ gave "some weight" to the opinion because the diagnosis and GAF were consistent with the record as a whole. R. 19. Further, regarding the opinion related to the psychiatric/psychological impairment questionnaire, the ALJ gave "some weight" to the GAF score between 55-60 because the record as a whole was consistent with the finding that the Claimant's symptoms are only moderate. R. 20. Moreover, the ALJ gave "some weight" to the January 31, 2013 form that Nurse Brooks signed and Dr. Zimmerman co-signed. R. 21.

Dr. Zimmerman and Nurse Brooks, (b) the January 26, 2012 psychiatric/psychological impairment questionnaire containing the opinion of Dr. Zimmerman and Nurse Brooks, and (c) the March 25, 2015 letter containing the opinion of Nurse Brooks.  As to each of those opinions, the ALJ discounted the opinion (or a portion thereof) because it was based primarily on Claimant's own self-report, inconsistent with Claimant's self-described level of activity, and inconsistent with the record evidence.  As to the last reason, the ALJ cited to Claimant's hospital records for admission from May 5, 2011 through May 20, 2011; progress reports from January 26, 2012 through October 16, 2012; and medical evaluation records dated December 16, 211 to November 5, 2012 (R. 902-974); and determined that the opinions at issue were inconsistent with that record evidence, which established that Claimant's symptoms were generally well-controlled.

But while Claimant challenges the ALJ's assignment of "little weight" to those opinions, Claimant never actually challenges whether substantial evidence supports the reasons articulated by the ALJ to assign that weight; thus, Claimant has waived any such challenge.  *See Sanchez v. Comm'r of Soc. Sec.*, 2013 WL 490029, at *4, n.1 (11th Cir. February 8, 2013) (noting that plaintiff waived particular arguments by not expressly challenging the ALJ's findings.).  Instead, Claimant seeks to have this Court look to other evidence in the record and determine that such other evidence preponderates against the ALJ's finding, but the Court will not reweigh the evidence.  *See Bloodsworth*, 703 F.2d at 1239.

And even assuming that Claimant challenged the reasons articulated by the ALJ for discounting the opinions at issue, the undersigned finds that the reasons articulated by the ALJ are supported by substantial evidence.  In particular, the ALJ cites to the records from Claimant's hospital admissions, progress reports, medical evaluation records and Dr. Zimmerman and Nurse Brooks' records.  R. 19-22.  *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 2010 WL 2977529, at

*4 (11th Cir. 2010) (per curiam) (rejecting argument that ALJ failed to accord proper weight to treating physician's opinion "because the ALJ articulated at least one specific reasons for disregarding the opinion and the record supports it.").

Moreover, Claimant's contention regarding the non-examining medical expert is simply inaccurate. Claimant argues that the ALJ relied on Dr. Buitrago's testimony at the April 2017 hearing to "diminish the weight given to the treating opinions of Dr. Zimmerman and A.P.N.P. Brooks." Doc. 19 at 25. However, there is nothing in the ALJ's discussion to show that his "little weight" determinations were based on Dr. Buitrago's testimony. So, there is no basis in the record for Claimant's contention in this regard.

In addition to her arguments centered around Dr. Zimmerman and Nurse Brooks, Claimant asserts vaguely that the ALJ failed to properly consider and weigh the "opinion evidence" and that her treating physicians have consistently opined that she suffered from moderate and marked limitations in all areas of mental functioning. Doc. 19 at 22, 25. This argument would suggest that the record contains opinions from several treating sources that the ALJ failed to appropriately weigh. Claimant, however, limits her specific argument to Dr. Zimmerman and Nurse Brooks, and does not identify any other treating source or opinion that the ALJ allegedly failed to consider or weigh.[8] *See id.* at 20-27. Thus, the undersigned finds that Claimant has waived any argument that the ALJ erred by improperly weighing or failing to weigh any other medical opinion. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (explaining that "simply stating an issue exists, without further argument or discussion constitutes abandonment of that issue.").

---

[8] The undersigned notes that Claimant mentions Dr. Stewart's opinion regarding her ability to do work related activities. Doc. 19 at 23-24. However, the document cited is dated August 2, 2016, which is after the date last insured. R. 1347-1350. At any rate, Claimant does not discuss the weight the ALJ should have given the opinion. Doc. 19 at 23-24.

Regardless, to the extent that her general discussion and citations to the record can be construed as an adequate argument that the ALJ failed to properly weigh the "medical opinion evidence" from other sources, the undersigned finds that substantial evidence supported the ALJ's decision. *See* R. 19-22.[9]

Therefore, it is recommended that the Court reject Claimant's assignment of error with respect to her mental impairment arguments.

**b. The Weight the ALJ gave to the Medical Opinion Evidence Pertaining to Claimant's Physical Impairments.**

With respect to her physical impairments, Claimant contends that her limitations are far in excess of those determined by the ALJ, who Claimant asserts failed to properly assess her impairments. Doc. 19 at 27. In relation to Claimant's myriad arguments mentioned within this section of her brief, the undersigned finds – as described in the following paragraphs – that Claimant's arguments are waived, are not supported by the record, were not before the ALJ for consideration, or otherwise fail to establish that the ALJ's findings were not supported by substantial evidence.

As an initial matter, Claimant states that on December 13, 2012, Cathy Otto, a state agency decisionmaker (SDM), reviewed the record and gave her lay person opinion that Claimant had the RFC to perform medium work with the ability to lift 50 pounds occasionally and 25 pounds frequently; stand and/or work about 6 hours in an 8-hour workday; sit about 6 hours in an 8-hour workday; and perform unlimited pushing and/or pulling. Doc. 19 at 18, citing R. 94. Claimant

---

[9] In relation to claims filed after March 27, 2017 (including the claim at issue here), the term "acceptable medical source" is now defined by 20 C.F.R. § 404.1502, which provides that a "Licensed Advanced Practice Registered Nurse" is an acceptable medical source for impairments within the licensed scope of practice. 20 C.F.R. § 404.1502(a)(7). Nurse Brooks is an "Advanced Practice Nurse Practitioner in Psychiatry." The undersigned has assumed that she is an acceptable medical source.

states that "[i]t *appears* that in finding [Claimant] able to perform medium level work, the ALJ relied on the assessment of the SDM, who never met [her] and who had no medical physical training whatsoever." *Id*. at 27-28, citing R. 14, 94 (emphasis added). Claimant argues that "[t]he ALJ's impermissible reliance on the SDM's determinations as evidence to determine Ms. Jimenez's physical RFC renders his decision unsupported by substantial evidence." *Id*. at 28.

As the Commissioner correctly points out, the ALJ did not mention the SDM or her opinion in the decision. The undersigned cannot glean from the ALJ's decision why it "appeared" to Claimant that the ALJ considered Ms. Otto's opinion. Claimant's argument is not supported by the record.

Next, Claimant states that "substantial record evidence does not support the ALJ's finding that [Claimant] can perform medium work," in that she cannot stand, sit, push and pull as required by someone performing medium work. Doc. 19 at 29. As the basis for this argument, Claimant states that she was a 62-year-old woman with hypothyroidism and back problems on the date she was last insured. *Id*. Claimant contends that "[c]onsidering these factors, it is highly unlikely that she retained the ability to lift and carry objects weighing 25-50 pounds." *Id*. Specifically, with respect to her back problems, Claimant states that following complaints of back pain that radiated down her right leg, Claimant had CT scans of her cervical spine, which revealed osteoarthritis, degenerative disease, herniated disc, and atherosclerosis. Doc. 19 at 18, citing R. 1258. Claimant further states that CT scans of her head were "abnormal," and an MRI showed "disc bulges, spondylosis, stenosis, loss of disc height, annular tears, arthropathy, and other abnormalities throughout levels L1-S1 of the spine." Doc. 19 at 19, citing R. 1327-1328. Claimant then states that x-rays taken in April 2015 showed "moderate to moderately severe degenerative disc disease and osteoarthritis, osteopenia of the bone, degenerative scoliosis, and calcification of the abnormal

aorta." Doc. 19 at 19, citing R. 1297.  Claimant adds that treatment notes from June 2015 reflected that she used a walker to ambulate due to the pain and weakness in her right leg prior to the back surgery.  Doc. 19 at 19, citing R. 1318.  It is Claimant's contention that these issues "do not just appear overnight, but rather develop over time as the person ages, indicating that [Claimant] had these findings during the relevant period in this case."  Doc. 19 at 30.  Claimant argues that these records are supportive of a more restrictive RFC.  *Id*. at 29.

While the record does include evidence pertaining to physical impairments, the undersigned finds that the ALJ did not have a duty to consider that evidence.  Claimant neither alleged in her application that these physical conditions existed, nor did she mention them at her hearing before the ALJ.  Indeed, Claimant was represented by counsel at the hearing and the focus was on her history of mental impairment; there was no testimony or discussion regarding back pain, osteoarthritis or her need for a walker or any other assistive device.

The Claimant has the burden of proving that he or she is disabled and, thus, entitled to disability benefits.  *Doughty v Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The ALJ has a basic duty to develop a full and fair record.  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam). This duty does not require the ALJ to "scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant."  *East v. Barnhart*, 2006 WL 2808242, *2 (11th Cir. 2006).  Thus, the Eleventh Circuit has routinely concluded that the ALJ has no duty to consider an impairment that the claimant did not allege to be disabling during the administrative process.  *Sullivan v. Comm'r of Soc. Sec.*, 2017 WL 2257332 (11th Cir. 2017); *Robinson v. Astrue*, 2010 WL 582617 (11th Cir. 2010); *Street v. Barnhart*, 2005 WL 1164202 (11th Cir. 2005).

The alleged physical ailments now identified by Claimant to this Court were simply not adequately identified to the ALJ.  And for a good reason: the majority of the records Claimant relies on now were created after the date last insured.  Claimant's date last insured was December 31, 2014, and the records regarding her x-rays, walker and back surgery came after this date.  *See Robinson v. Astrue*, 2007 WL 1072927, *2, n.1 (11th Cir. 2007) (noting that evidence of disability dated after the date last insured is not pertinent to a claim for DIB).  The undersigned recognizes that some of the records Claimant cites to predate the date last insured, albeit by a few weeks or months, and it is Claimant's position that the conditions developed over a period of time.  Nevertheless, Claimant failed to properly allege that these were disabling conditions during the administrative process.  Accordingly, Claimant has not met her burden.

With regard to her hypothyroidism and age, Claimant fails to explain how the condition impacted her ability to perform medium work.  Claimant also offers no explanation or citation to authority in support of her contention that her age means it is "highly unlikely" that she can perform medium work.  Thus, Claimant waived the argument.  *See Jacobus v. Comm'r of Soc. Sec.*, 2016 WL 6080607, at *n.2 (11th Cir. 2016) (stating that claimant's perfunctory argument was arguably abandoned.).  Assuming waiver did not occur, the ALJ did take these factors into consideration.   The ALJ stated that "based on the record as a whole, the undersigned finds that the claimant's thyroid disorder was a severe impairment."  R. 22.  Notably, the ALJ made this finding in the section of the decision wherein he discussed the opinions he considered.  R. 17, 22.  The ALJ also considered Claimant to be an individual of advanced age on the date last insured, and the ALJ subsequently changed the age category to "closely approaching retirement age."  R. 25.  Moreover, the ALJ noted that, during his questioning of the VE, he asked the VE to take Claimant's age into consideration.  R. 26.

Claimant provides no argument or legal authority to suggest that the ALJ's determination was not supported by substantial evidence.  Claimant's cursory statement regarding her age, hypothyroidism and back problem is not sufficient.  *See Gaskey v. Colvin*, 2014 WL 4809410, *7 (N.D. Ala. 2014) (refusing to consider claimant's argument when claimant failed to explain how the evidence undermined the ALJ's decision).

Claimant also challenges the ALJ's finding with regard to her credibility.  Claimant states that the ALJ should have found her complaints to be "fully credible because controlling medical and other evidence supports her subjective complaints, and include limitations based on the assessments of all of her treating and consulting physicians and clinicians, some of whom specifically noted that she is credible."  Doc. 19 at 30, citing R. 813, 979, 988.  Claimant concludes that "[t]he ALJ should have assessed adequate limitations based on [her] subjective complaints in her ultimate RFC determination."  R. 31.

Like Claimant's previous argument, she has failed to provide the Court with an analysis. It is, therefore, waived.   Notwithstanding waiver, the ALJ provided several reasons in support of his credibility determination regarding Claimant's complaints.   A claimant may establish "disability through his own testimony of pain and other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam).  If the ALJ finds that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work.  20 C.F.R. § 404.1529(c)(1).  If the ALJ decides to discredit the claimant's testimony, he or she must articulate specific and adequate reasons for doing so.  *Foote*, 67 F.3d at 1561-62; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

The ALJ's decision provides as follows:

In sum, the above residual functional capacity assessment is supported by the medical evidence of record, some of the opinions, and the following additional factors:

The claimant testified that she spent her days doing nothing.  However, the claimant reported to her mental health providers that she spent time with her family and with friends.  The claimant reported having houseguests and spending time with her grandchildren.  On December 6, 2011, the claimant told Dr. Townsend that she tried to exercise regularly.  Dr. Townsend noted that there were no signs of depression, confusion or difficulty making decisions.  The claimant testified that she did not eat out, but the claimant told Ms. Brooks that she enjoyed going to brunch.  The claimant testified that she had no life.  However, she told Ms. Brooks that she participated in a library club.  The claimant said that she often considered suicide, but she consistently denied thoughts of suicide at her medication management appointments.  Mrs. Jimenez testified that she would not leave the house or answer the phone.  She said her life was full of dread.  However, the claimant consistently reported only mild dysphoria to her mental health providers, and she never reported that she did not leave the house or answer the phone.  The claimant told Ms. Brooks that she rode a bike for exercise, hosted a gathering at her home, and kept her young grandchildren for over three weeks.  At the consultative psychological evaluation, the claimant told Dr. Nicolas that she did some cooking and cleaning.  She said she occasionally attended social gathering and occasionally visited with family.  Mrs. Jimenez did not explain the contradictions between her testimony and the medical evidence of record. The undersigned accords little weight to the claimant's testimony because it is inconsistent with the objective treatment records, which demonstrate that the claimant's symptoms are well controlled with medication.  The record as whole supports the finding that the claimant is able to work within the confines of the residual functional capacity.

R. 23-24.

Based on the foregoing, it is clear that the ALJ discussed specific reasons why he found inconsistencies between Claimant's testimony and complaints and other evidence in the record. Inconsistencies between a claimant's testimony, medical evidence, and daily activities may provide a valid reason for an adverse credibility determination.  *See Long v. Colvin*, 2015 WL 12850567, at *3 (M.D. Fla. September 11, 2015) (concluding that the claimant's lack of support in the medical evidence combined with inconsistencies in the claimant's statements regarding his limitations provided substantial evidence supporting the ALJ's credibility determination).

The undersigned finds that the ALJ's reasoning is adequate to discredit the subjective complaints and there is no basis to find error.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  *See Foote*, 67 F.3d at 1562, citing *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986).

Moreover, Claimant challenges the ALJ's findings with respect to "concentrating, persisting and maintaining pace" in the physical impairment section of her brief.  Claimant states that the ALJ found that she could perform "simple tasks," which the Eleventh Circuit has found to be "insufficient to account for moderate limitation in this area."  Doc. 19 at 29.  Claimant states that "[i]n *Winschel* the Eleventh Circuit explained 'that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"  *Id*.

Claimant correctly quotes *Winschel* but the Eleventh Circuit provides more guidance beyond that sentence.  The Court of Appeals also explains that "[a]dditionally, other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations." *Winschel*, 631 F.3d at 1180-81 (citations omitted).

Here, the ALJ's hypothetical to the VE did include the phrase "simple tasks," but added that Claimant needs tasks that do not require the assistance of others or require her to assist others in the performance of their tasks.  R. 61-62.  This hypothetical was adopted into the RFC.  R. 14.

Further, in the ALJ's decision, he found:

> With regard to concentrating, persisting, or maintaining pace, the claimant had moderate limitations.  The claimant was able to drive.  She was able to manage her medical and legal affairs.  She was able to provide childcare for her young grandchildren.  She did report to a provider that she could not manage money because of impulsive spending habits.  These factors support the finding that her limitations were only moderate.

- 17 -

R. 13.

Upon due consideration, the undersigned finds that the ALJ adequately accounted for Claimant's limitation in the hypothetical and findings.

Finally, Claimant contends that the ALJ's RFC finding failed to "properly provide for the side effects caused by [her] medications." Doc. 19 at 31. Claimant states that she reported that Seroquel, taken for bipolar disorder, causes sleepiness and the ALJ failed to consider this side effect in making his determination. *Id*. Claimant provides that the ALJ failed to adequately analyze the impact of the medication side effect on her ability to work as required under law. *Id*.

First, Claimant's cursory statement does not explain how the ALJ's RFC determination is unsupported by substantial evidence. Accordingly, the argument is waived. *See NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

Second, Claimant's statement is not entirely supported by the record. The ALJ specifically noted in his determination that Claimant advised Nurse Brooks that "Seroquel, which she took at night, was sedating." R. 20. Nurse Brooks notes reflect that Claimant made that statement. R. 982. Claimant fails to address the ALJ's decision with respect to the Seroquel or otherwise support her assertion that he failed to include additional exertional or non-exertional limitations in the RFC due to the side effects.

Third, Claimant does not explain how the alleged failure to consider the side effect would result in a more restrictive RFC. Claimant has provided no persuasive argument to suggest that the ALJ's alleged error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (explaining that the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Accordingly, it is recommended that the Court reject Claimant's assignment of error as to the physical impairments argument.

**Issue No. 2:  Whether Substantial Evidence Supports the ALJ's Step 5 Finding**

Claimant argues that the ALJ erred in finding that she could perform other work in the national economy.  Doc. 19 at 46.  The undersigned finds no error.  Claimant accurately states that the ALJ proceeded to step five to determine whether she retained the ability to perform other work existing in significant numbers in the national economy given the fact that he found that she could not perform her past relevant work.

At step five of the sequential evaluation process, the ALJ must consider the claimant's residual functional capacity, age, education, and work experience in determining whether she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At this step, the Commissioner bears the initial burden of demonstrating "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *abrogated on other grounds by Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353 (11th Cir. 2018).  If the Commissioner satisfies this burden, the burden shifts back to the claimant to demonstrate she is unable to perform the jobs identified by the Commissioner.  *Id.*  If the claimant cannot perform other work in the national economy, then she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In her brief, Claimant states that the "Commissioner may rely on the [Medical Vocational Guidelines (the Grids)] to establish whether other work exists in the national economy for a claimant."  Doc. 19 at 46.  The entirety of her argument is that, applying the Grids to the instant case, she would have been found disabled at step five given her age – 57 at the onset and 62 on her date last insured.  Claimant states that "grid rules 201.04 (sedentary) or 201.06 (sedentary),

finds disabled an individual with Ms. Jimenez's identical vocation factors," and the ALJ failed to meet the burden of proving Claimant retains the ability to perform other work in the national economy.  Doc. 19 at 47.

The Commissioner responds that assuming she could not perform medium work, there is no showing that she could only perform sedentary work instead of light, and Claimant fails to develop an argument that the evidence showed she could only perform sedentary work.  The Commissioner argues, and the undersigned agrees, that by asking the Court to find her disabled based on her Grids' argument, she invites the Court to decide facts anew and reweigh the evidence, which is not permitted.  *See Heckler*, 703 F.2d at 1239.  As such, there is no merit to her argument.

Further, the undersigned concludes that the ALJ did not err in finding that Claimant could perform other work in the national economy.  "The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ must use the Grids to determine whether other jobs exist in the national economy that a claimant is able to perform." *Phillips*, 357 F.3d at 1242.  An ALJ may not exclusively rely on the Grids when the "claimant is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills."  *Id.* (citations omitted).

The relevant part of the examination of the vocational expert (VE)[10] at the April 2017 hearing went as follows:

ALJ:  Have you heard the testimony regarding the claimant's past work?

VE:  I have.

ALJ:  Having reviewed the claimant's vocational history, would you describe the claimant's past work?  Please identify the job, the exertional level of each job and the skill level of each job performed within the past 15 years.

---

[10] The vocational expert was Joy Kilpatrick.  R. 60.

VE:  Yes, Your Honor.  An office manager, 209.362-010, SVP of 4, light.

ALJ:  Any transferrable skills?[11]

VE:  No, Your Honor.

ALJ:  Thank you.  Assume that I find the claimant is 65 years old, has a high school education.  Assume further I find that she can perform medium work, but is limited by the following exertional and non-exertional impairments.  She needs to avoid ladders or unprotected heights.  She needs to avoid the operation of heavy moving machinery.  She needs a low stress work environment.  By that I mean no production line.  She needs simply tasks.  She needs to avoid contact with the public or coworkers and by that I mean she needs tasks that do not require the assistance of other [sic] or require her to assist others in the performance of their tasks.  Can the claimant perform any of her past work?

VE:  No, Your Honor.

ALJ:  Let's go down to entry level and assume the claimant has no skills or semi-skills at all and she's the age I previously described, has the work experience and the education previously stated.  Assume further that she can perform medium work and has the exertional and non-exertional limitations I originally described.  Are there any entry level jobs the claimant could perform and, if so, could you give us the title of the job, number of jobs in the region, which I define as the State of Florida?

VE:  Yes, Your Honor.  A hospital cleaner, 323.687-010, SVP of 2, medium, 298,000 jobs nationally, 27,000 listed in Florida.  A hand packager, 920.587.018, SVP of 2, medium, 217,000 jobs nationally, 31,000 jobs in the States of Florida.  And, a laundry worker I, 361.687-018, SVP of 2, medium, 321,000 jobs nationally, 24,000 in the State. [[12]]

                                                   ***

Claimant's Attorney (Attorney): Ms. Kilpatrick, is it fair to say that a hypothetical person who's not able to deal with other people at all is effectively unemployable?

VE:  Every worker has to deal occasionally, one-third of the time, with a supervisor.  If you ask me the question a little bit different, I could answer it better.

---

[11] It appears that Plaintiff suggests that the ALJ erred by not determining whether she had transferable job skills.  Doc. At 46.  However, she did not develop an argument or cite to any authority.  Consequently, she has waived the argument.  *See McClain of Georgia, Inc.*, 138 F.3d at 1422.

[12] The ALJ also inquired about break periods and absences.  R. 62-63

Attorney:  I was just trying to clarify, I guess, if we add to the hypothetical, no public contact and not extensive contact with coworkers, but if we modify the hypothetical so this hypothetical person can't have any contact with other persons in the workplace, does that eliminate all jobs?

VE:  If they cannot have any contact with the supervisor, they would eliminate all the jobs.

Attorney:  I know we were talking about simple tasks, but can you give me an idea – the claimant was talking about the difficulty with frustration, are simple tasks ones that aren't ever going to present a workers [sic] with any kind of frustration or stress?

VE:  They would get a basic job performance, Counsel.

Attorney:  Well, I'm just wondering how we can dub [sic] it down further than just simple tasks.  How simple is simple?  If somebody is not able to deal with frustration or stress, can they still accomplish a job that's classified by the DOT as requiring simple tasks?

VE:  I hear two different questions.  Stress is something that's subjective.  Stress is different for the individual, so I could not answer that.  These are non-production work, so they're not fast paced work and they are SVP of 2, which are unskilled and it takes up to 30 days to learn those jobs.

Attorney:  All right, that's fair enough.  You're answering within your realm of expertise.  I appreciate that.  Thank you.  I don't have any further questions.

R. 60-65.

According to the decision, the ALJ stated "[t]hrough the date last insured, if the claimant had the residential functional capacity to perform the full range of medium work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 203.15 and Rule 203.07.  However, the [C]laimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations." R. 26.  The ALJ then stated that "[t]to determine the extent to which these limitations erode the unskilled medium occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and

residual functional capacity." *Id.*  The ALJ accepted the VE's testimony and concluded that Claimant was capable of making a successful adjustment to work that existed in significant numbers in the national economy.  *Id.*

Based on the foregoing, the ALJ did not mechanically apply the Grids, but correctly determined that he needed to utilize the VE's testimony to establish whether a significant number of jobs existed for Claimant in the national economy.  Given the VE's testimony that there existed jobs in the national economy that a person with Claimant's RFC could perform, substantial evidence supports the ALJ's conclusion that Claimant was not disabled.

Accordingly, it is recommended that the Court reject Claimant's assignment of error as to her national economy argument.

## V.    <u>CONCLUSION</u>

For the reasons stated above, it is **RECOMMENDED** that the Court:

1.    **AFFIRM** the final decision of the Commissioner; and

2.    Direct the Clerk to enter judgment in favor of the Commissioner and against Claimant and close the case.

<u>**NOTICE TO PARTIES**</u>

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

**DONE** and **ORDERED** in Orlando, Florida on April 2, 2019.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Robert Droker
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
Desoto Bldg., Suite 400
8880 Freedom Xing Trl.
Jacksonville, FL 32256-1224