UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JANE P. JIMENEZ,

    Plaintiff,

v.                                    Case No. 6:18-cv-510-Orl-37DCI

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

### ORDER

In this social security appeal, Plaintiff Jane Jimenez seeks review of the Commissioner of Social Security's final decision denying her application for social security disability benefits. (Doc. 1.) On referral, U.S. Magistrate Judge Daniel C. Irick recommends affirming the Commissioner's final decision. (Doc. 20 ("**R&R**").) Both Plaintiff and the Commissioner objected to the R&R (Doc. 21 ("**Plaintiff's Objection**"); Doc. 22 ("**Commissioner's Objection**")), and the Commissioner responded to Plaintiff's Objection (Doc. 25). On *de novo* review, the Court finds: (1) the Commissioner's Objection is sustained; (2) Plaintiff's Objection is overruled; (3) the R&R is adopted in part and rejected in part;[1] and (4) the Commissioner's final decision is affirmed.

---

[1] Magistrate Judge Irick also issued a supplemental report and recommendation under Rule 72(b)(3) to address one of the arguments raised in the Commissioner's Objection. (Doc. 27 ("**Supplemental R&R**").) Specifically, the Supplemental R&R recommends disregarding footnote 9 of the R&R ("**Footnote 9 Recommendation**"). (*Id.* at 1–2.)

## I. BACKGROUND

On October 11, 2012, Plaintiff applied for disability insurance benefits. (Doc. 1; *see also* R. 112.)[2] She alleged a disability onset date of March 30, 2009 and her last date of insured was December 31, 2014. (R. 12.)

After her claims were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("**ALJ**"). (R. 112.) On March 24, 2015, following a hearing, the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act ("**SSA**") between March 30, 2009 and December 31, 2014. (R. 112–125.) Plaintiff sought review of the ALJ's decision, and the Appeals Council remanded the matter to the ALJ to further evaluate Plaintiff's mental impairments "in accordance with the special technique described in 20 CFR 404.1520a." (R. 133–34.) On remand, the ALJ conducted a hearing on April 20, 2017, at which Plaintiff and her attorney appeared. (R. 44–65.)

On May 8, 2017, the ALJ entered an unfavorable decision finding that Plaintiff was not disabled. (R. 10–27.) Following the SSA's five-step sequential process, the ALJ found that Plaintiff had these severe impairments: affective disorder, thyroid disorder, and drug and alcohol abuse. (R. 12.) The ALJ then found that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the SSA regulations. (R. 13–14.) The ALJ assessed Plaintiff's residual functional capacity ("**RFC**"):

---

[2] The Court cites the administrative record as "**R.**" in reference to the Social Security Transcript located at Doc. 12.

> 5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c). She needed to avoid ladders and unprotected heights. She needed to avoid the operation of heavy moving machinery. She needed a low stress job with no production lines. She needed simple tasks. She needed to avoid contact with the public. She needed to avoid contact with coworkers. She needed tasks that did not require the assistance of others or require her to assist others in the performance of their tasks.

(R. 14.) The ALJ found that Plaintiff had no past relevant work and considered whether any jobs existed in significant numbers in the national economy she could perform, finding:

> 10. Through the dated last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decisionmaking unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decisionmaking (SSR 85-15).

> Through the date last insured, if the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.15 and Rule 203.07. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as jobs:
>
> - Hospital Cleaner, DOT # 323.687-010, SVP 2, unskilled, medium exertion, 298,000 positions in the national economy;
> - Hand Packager, DOT # 920.587-018, SVP 2, unskilled, medium exertion, 217,000 positions in the national economy;
> - Laundry Worker I, DOT #361.687-018, SVP 2, unskilled, medium exertion, 321,000 positions in the national economy.
>
> Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

(R. 25–26.)

The ALJ concluded that Plaintiff was "not disabled." (R. 26.) Plaintiff then requested review of the decision by the Appeals Council. (R. 1–6.) Her request was denied, so the ALJ's decision became final. (R. 1.) Plaintiff then sued requesting review of the Commissioner's decision and reversal for an award of benefits or remand. (Doc. 1.) As grounds, Plaintiff cited three assignments of error: (1) the ALJ failed to properly weigh the medical opinion evidence pertaining to her mental impairments; (2) the ALJ failed to properly weigh the medical opinion evidence pertaining to her physical impairments; and (3) the ALJ erred in finding she could perform other work in the national economy.

(Doc. 19, pp. 20–48.)

On referral, Magistrate Judge Irick issued a comprehensive report and recommendation finding the Commissioner's decision should be affirmed on all assignments of error. (Doc. 20.) Both parties objected. (Docs. 21, 22.) Plaintiff asserted the Court should reject Magistrate Judge Irick's findings regarding: (1) Plaintiff's mental limitations; (2) the RFC determination; and (3) Plaintiff's ability to perform work that exists in significant numbers in the national economy. (Doc. 21.) The Commissioner responded to Plaintiff's Objection (Doc. 25) and separately objected to the R&R's assumption that Dr. Raul Zimmerman was Plaintiff's treating physician and footnote 9 regarding an acceptable medical source (Doc. 22). Magistrate Judge Irick then issued the Supplemental R&R recommending the Court disregard footnote 9, which neither party objected to. (Doc. 27.) So the Court now reviews the R&R *de novo* based on Plaintiff's Objection and the remainder of the Commissioner's Objection. The matter is ripe.

## II. LEGAL STANDARDS

When a party objects to a magistrate judge's findings, the district court must "make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* The district court must consider the record and factual issues based on the record independent of the magistrate judge's report. *Ernest S. ex rel. Jeffrey S. v. State Bd. of Educ.*, 896 F.2d 507, 513 (11th Cir. 1990).

### III. DISCUSSION

Plaintiff's Objection raises three issues (Doc. 21) and the Commissioner's Objection now raises one (Doc. 22).[3] The Court addresses each.

### A. Treating Physician Argument

The Commissioner objects to the R&R's recommendation this Court assume Dr. Zimmerman was Plaintiff's treating physician ("**Dr. Zimmerman Recommendation**"). (Doc. 22, pp. 2–3; *see* Doc. 20, p. 8 n.6.) The Commissioner contends Plaintiff never challenged the Commissioner's determination that Dr. Zimmerman was not her treating physician, so Plaintiff waived the right to challenge that issue and the "Court should not simply assume for the sake of analysis that Dr. Zimmerman was a treating physician." (Doc. 22, pp. 2–3.)

In the R&R, Magistrate Judge Irick explained that determining whether Dr. Zimmerman was Plaintiff's treating physician was a preliminary issue for the Court to consider before evaluating the weight assigned to the opinions of Dr. Zimmerman and Nurse Brooks. (Doc. 20, p. 8 n.6.) And although Magistrate Judge Irick stated that "the ALJ explicitly found" Dr. Zimmerman was not Plaintiff's treating physician, Magistrate Judge Irick recommended the Court not directly address the issue and simply assume

---

[3] Neither party objected to the Supplemental R&R, so the Court has examined the Supplemental R&R only for clear error. *See Wiand v. Wells Fargo Bank, N.A.*, No. 8:12-cv-557-T-27EAJ, 2016 WL 355490, at *1 (M.D. Fla. Jan. 28, 2016); *see also Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). Finding none, the Court concludes that the Supplemental R&R is due to be adopted in its entirety. Thus, the Court adopts the Footnote 9 Recommendation and disregards footnote 9 of the R&R. (*See* Doc. 20, p. 11 n.9.)

that he was for purposes of the analysis. (*Id.*) Now, the Commissioner challenges that assumption, arguing that Plaintiff never challenged the ALJ's finding that Dr. Zimmerman was not a treating physician. (Doc. 22, pp. 2–3.)

An ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). Without such a statement, a reviewing court cannot determine whether the ultimate decision was supported by substantial evidence. *Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985) (per curiam). Here, the ALJ explicitly found Dr. Zimmerman was not Plaintiff's treating physician—"A review of the treatment records demonstrates that claimant met with Ms. Brooks, not Dr. Zimmerman. There is no evidence that Dr. Zimmerman treated the claimant."—and afforded Dr. Zimmerman's opinion "little weight." (R. 19–20.) The ALJ properly articulated that he found Dr. Zimmerman was not Plaintiff's treating physician and assigned his opinions little weight.

To the extent Plaintiff intended to challenge the weight the ALJ assigned to Dr. Zimmerman's opinion,[4] Plaintiff never specifically objected to the ALJ finding he was not a treating physician, and waived any argument on that determination. (*See* Doc. 19, pp. 24–27); *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (explaining that the plaintiff "effectively abandoned" a challenge that was not explicitly

---

[4] Plaintiff's references to Dr. Zimmerman suggest she believed he should be considered her treating physician, but she never expressly challenged the ALJ's finding. (*See, e.g.*, Doc. 19, p. 9 ("Brooks and Dr. Zimmerman also completed a . . . . Questionnaire in which they noted that they had treated [Plaintiff] since January 2012.").)

-7-

raised).[5] So the Commissioner's Objection is sustained and the R&R is overruled to the extent it assumed Dr. Zimmerman was Plaintiff's treating physician. Dr. Zimmerman is not be considered a treating physician for the analysis.[6]

### B. Mental Impairment Argument

Now the Court turns to Plaintiff's Objection. First, Plaintiff argued the R&R wrongly rejected her first assignment of error—that the ALJ improperly weighed the medical opinion evidence offered to support her mental impairments. (Doc. 21, pp. 1–3.) Plaintiff claims the ALJ erred in according greater weight to the opinion of the non-examining medical expert than to the opinions of Dr. Zimmerman and Nurse Brooks.[7] (*Id.*) The Commissioner responds that Plaintiff waived any challenge to the ALJ's reasons for discounting the opinions of Dr. Zimmerman and Nurse Brooks and Plaintiff's request improperly asks the Court to reweigh the medical evidence. (Doc. 25, pp. 2–3.)

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). In performing its assessment, the ALJ must consider all relevant

---

[5] While unpublished opinions are not binding precedent, they may be considered as persuasive authority. *See* 11th Cir. R. 36-2; *see also United States v. Almedina*, 686 F.3d 1312, 1316 n.1 (11th Cir. 2012).

[6] However, the Commissioner does not contend the determination regarding whether Dr. Zimmerman was Plaintiff's treating physician affects the R&R's ultimate conclusion to affirm the ALJ's decision. Rather, the Commissioner argues that the ALJ would have still properly evaluated the opinions Dr. Zimmerman co-signed even if he was a treating physician. (Doc. 22, p. 3 (citing Doc. 19, pp. 22–40).)

[7] Plaintiff refers to Dr. Zimmerman and Nurse Brooks as her "treating physicians." (*See* Doc. 21, pp. 1–3.) As previously discussed, the ALJ explicitly found Dr. Zimmerman was not Plaintiff's treating physician. (R. 20.)

evidence, including the medical opinions of treating, examining, and non-examining medical sources. *See* 20 C.F.R. § 404.1545(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012). Absent good cause, the ALJ gives a treating physician's medical opinion "substantial or considerable weight." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quoting *Phillips*, 357 F.3d at 1241). The ALJ must specify the weight given to each medical opinion and the explain the reasons for assigning such weight to each opinion. *Id.*

Here, the ALJ assigned "little weight" to the opinions of Dr. Zimmerman and Nurse Brooks. (R. 20.) The ALJ explained that Dr. Zimmerman and Nurse Brooks' opinions were accorded little weight because their opinions were "primarily based on the claimant's report that she experiences exacerbation in her symptoms when she is under stress and that she cannot manage the stress of full time work," which the ALJ concluded was "inconsistent with the record as a whole that shows that the claimant's symptoms are generally well controlled." (R. 20.) In deciding to discount their opinions, the ALJ cited to Plaintiff's hospital admissions, progress reports, and medical evaluation records. (*See* R. 19–22.)

Plaintiff argues the R&R erred in affirming the ALJ's decision to assign "little weight" to the opinions of Dr. Zimmerman and Nurse Brooks. (Doc. 21, pp. 1–3.) But this argument fails for two reasons. First, Plaintiff did not challenge the ALJ's decision to

assign Dr. Zimmerman and Nurse Brooks' opinion "little weight." (Doc. 20, p. 9.) Rather, Plaintiff only argued that the record is replete with evidence supporting Dr. Zimmerman and Nurse Brooks' opinions, but Plaintiff fails to argue that substantial evidence does not support the ALJ's decision to assign the opinions little weight. (*See* Doc. 19, pp. 20–27.) Plaintiff waived any challenge on this point. *See Sanchez*, 507 F. App'x at 856 n.1 (explaining that the plaintiff "effectively abandoned" a challenge not explicitly raised).

Second, even if Plaintiff properly raised the challenge, the argument still fails because her objection would require the Court to reweigh the evidence to determine whether the ALJ's finding is supported by substantial evidence. *See Dyer v. Barnhard*, 395 F.3d 1206, 1210 (11th Cir. 2005) (explaining that when reviewing the Commissioner's decision the Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." (citations omitted)). And there is substantial evidence, including numerous medical records, supporting the ALJ's decision. (*See* R. 19–22.) So Plaintiff's argument that "the ALJ erred in according greater weight to the opinion of the [non-examining medical expert] than to Plaintiff's treating physicians," is unavailing.[8] (Doc. 21, p. 3) Even if the Court disagrees with the Commissioner's determination, it would not reconsider the weight the Commissioner assigned to the

---

[8] To the extent Plaintiff argues a treating physician's opinion is entitled to more weight than a non-examining medical expert, that argument is similarly unavailing. (Doc. 21, p. 3.) First, the ALJ found Dr. Zimmerman was not Plaintiff's treating physician. (R. 20.) Second, there is no indication in the record that the ALJ reduced the weight accorded to Dr. Zimmerman and Nurse Brooks' opinions because of the non-examining medical expert. (*See* R. 19–22.) And a Court may discount a treating physician's opinion when it is not supported by evidence. *See Winschel* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241).

various medical opinions because the ALJ's decision is supported by the record. *See D'Andrea v. Comm'r of Soc. Sec. Admin.*, 389 F. App'x 944, 948 (11th Cir. 2010) (rejecting the argument that the ALJ failed to assign the appropriate weight to the treating physician's opinion "because the ALJ articulated at least one specific reason for disregarding the opinion and the record supports it"). Plaintiff's Objection regarding the mental impairment finding is overruled.

C. **RFC Argument**

Next, Plaintiff objects to the R&R's finding that substantial evidence existed to support the ALJ's determination she could perform medium work.[9] (Doc. 21, pp. 3–5.) Specifically, Plaintiff argues that the ALJ had to evaluate the entire record, and she provided sufficient support for a determination she is more limited than the ALJ found. (*Id.*) She also asserts the ALJ failed to consider her difficulties concentrating and the side effects caused by her medication, which further limit her abilities. (*Id.*) In opposition, the Commissioner argues that the ALJ did not err in finding that evidence from after the date of insured did not undermine the substantial evidence supporting the RFC determination. (Doc. 25, pp. 3–5.)

First, the Court considers Plaintiff's argument that the ALJ failed to consider evidence that undermines the ALJ's conclusion she could perform medium work. (Doc. 21, pp. 4–5.) Plaintiff contends her physical ailments do not support the ALJ's finding she could perform medium work. (Doc. 21, pp. 3–5; *see also* Doc. 19, pp. 26–30.) Plaintiff

---

[9] Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

argues the record contains significant evidence that she has degenerative disc disease, osteopenia of the bone, and degenerative scoliosis, which undermine the ALJ's RFC determination. (Doc. 21, pp. 4–5.)

The RFC "is an assessment, based upon all the relevant evidence, of a claimant's remaining ability to do work despite [her] impairments." *Lewis v.* Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Here, the ALJ found Plaintiff had the RFC to perform medium work, with specific limitations. (R. 14.) The ALJ relied on medical evidence in the record to conclude that Plaintiff has "no work preclusive physical limitations" and accorded "little weight" to Plaintiff's own subjective testimony because it was "inconsistent with objective treatment records." (R. 14–25.)

Plaintiff must prove that she is disabled and entitled to disability benefits. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). But she failed to raise these physical ailments in her application or at the hearing before the ALJ. (*See* R. 44–65, 370–71; *see also* Doc. 1, ¶ 4.) Instead, Plaintiff, represented by counsel, focused the inquiry at the hearing on her mental impairments and did not mention her physical limitations. (*See* R. 44–65.) While the ALJ must consider all impairments, the ALJ is not required to "scour the medical record searching for other impairments that might be disabling, either individually or in combination, that have not been identified by the claimant." *East v. Barnhart*, 197 F. App'x 899, 902 (11th Cir. 2006). The ALJ did not have to consider the records Plaintiff now cites to support her Plaintiff's physical impairment argument because she never raised them during the administrative process. *See Sullivan v. Comm'r of Soc. Sec.*, 694 F. App'x 670, 671 (11th Cir. 2017) (holding the ALJ had no duty to investigate a claim the claimant did

not present during the application for benefits or offered for disability); *see also Robinson v. Astrue*, 365 F. App'x 993, 996–97 (11th Cir. 2010) (same); *East*, 197 F. App'x at 902 (same); *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (same).

Furthermore, many of the records Plaintiff now cites to support her argument are from after the last insured date,[10] which the ALJ does not have to consider.[11] *See Robinson v. Astrue*, 235 F. App'x 725, 727 n.1 (11th Cir. 2007) (stating that evidence of disability after the last insured date is not pertinent); *Hughes v. Comm'r Soc. Sec. Admin.*, 486 F. App'x 11, 13–14 (11th Cir. 2012) (finding medical opinions from after the last date insured "not particularly relevant to whether [plaintiff] was disabled"). Plaintiff's Objection on the ALJ's failure to consider certain physical impairments is overruled.[12]

---

[10] In the objection, Plaintiff cites to four documents in the record in support of her contention that the record evidence shows that she had physical impairments including "degenerative disc disease, osteopenia of the bone, degenerative scoliosis, and other progressive conditions." (Doc. 21, pp. 5–6.) Of those documents, half are from outside the relevant time period. (*See* R. 12, 58–59, 1297, 1317, 1327–28.)

[11] Plaintiff's reliance on *Kroslowitz v. Colvin*, No. 3:12-cv-1140-J-JRK, 2014 WL 4655442, at *5 n.8 (M.D. Fla. Sept 17, 2014), is misplaced. (Doc. 21, pp. 4–5.) As *Kroslowitz* explains, "[e]ven a retrospective diagnosis may be considered if it is validated by evidence within the relevant time period." *Id.*; *see also Hughes v. Comm'r of Soc. Sec. Admin*, 486 F. App'x 11, 14 (11th Cir. 2012) (explaining that medical opinions from after the last date insured not based on the claimant's condition during the relevant period were "not particularly relevant to whether [the claimant] was disabled"). Plaintiff fails to properly allege, and the Court does not independently find, that the post-last date insured medical opinions opined on Plaintiff's condition during the relevant period. (*See* Doc. 19, pp. 26–30; *see also* Doc. 21, pp. 3–5.)

[12] To the extent Plaintiff argues that the ALJ should have found her own subjective complaints credible, the ALJ cited to various records in support of his conclusion that Plaintiff's subjective opinions were entitled to "little weight" because her testimony "is inconsistent with the objective treatment records, which demonstrate that the claimant's symptoms are all well controlled with medication." (R. 23–25.) Thus, the Court will not undo the ALJ's decision, which was grounded in substantial evidence. *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (declining to disturb the ALJ's

Next is Plaintiff's argument that the ALJ did not account for the limitations caused by her inability to concentrate. Specifically, she contends the hypothetical questions posed to the vocational expert ("**VE**") failed to account for her concentration limitations, and the ALJ erred in finding she could perform simple tasks. (Doc. 21, pp. 3–4; *see also* Doc. 19, pp. 27–28.)

Plaintiff relies on *Winschel* to assert that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine, tasks or unskilled work. (Doc. 21, p. 3–4 (citing *Winschel*, 631 F.3d at 1180).) But in *Winschel* the U.S. Court of Appeals for the Eleventh Circuit also explained that "other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations." 631 F.3d at 1180; *see also Hines-Sharp v. Comm'r Soc. Sec.*, 511 F. App'x 913, 916 (11th Cir. 2013) (explaining the ALJ can implicitly account for a claimant's limitations in a hypothetical without specifically using "the magic words concentration, persistence, and pace").

Here, the ALJ's hypothetical posed to the vocational expert included "simple tasks," but also included tasks that "do not require the assistance of other [sic] or require her to assist others in performance of their tasks." (R. 61–62.) That hypothetical was explicitly incorporated into the RFC finding. (R. 14) And the ALJ decision specifically addressed Plaintiff's difficulty concentrating:

---

decision to discredit the plaintiff's subjective complaints when the finding was supported by substantial evidence).

> With regard to concentrating, persisting, or maintaining pace, the claimant had moderate limitations. The claimant was able to drive. She was able to manage her medical and legal affairs. She was able to provide childcare for her young grandchildren. She did report to a provider that she could not manage money because of impulsive spending habits. These factors support the finding that her limitations were only moderate.

(R. 13.) Because the ALJ implicitly, if not expressly, accounted for Plaintiff's limitations concentrating in the VE hypothetical and addressed her limitations in the RFC finding, the ALJ's determination had the requisite evidentiary support. Plaintiff's Objection on this issue is overruled.

Last is Plaintiff's argument that the ALJ failed to consider the side effects caused by her medications. Plaintiff asserts that she took Seroquel to treat her bipolar disorder, which causes various side effects including sleepiness. (Doc. 21, p. 5; *see also* Doc. 19, p. 31.) And the ALJ's medium work conclusion is faulty because it failed to consider those side effects. (Doc. 21, p. 5.)

But Plaintiff's assertion is belied by the record. The ALJ specifically noted in its decision that Plaintiff informed Nurse Brooks that "Seroquel, which she took at night, was sedating." (R. 20.) And more important, even if Plaintiff is correct, she failed to explain how the alleged error was harmful—i.e. would cause a different RFC finding. *See Shineski v. Sanders*, 556 U.S. 396, 409 (2009) ("The burden of showing harmfulness is normally on the party attacking an agency's determination."). So Plaintiff's side effect argument fails too. With that, all of Plaintiff's arguments pertaining to the RFC determination are rejected.

### D. Ability to Perform Other Work in the National Economy Argument

Last, Plaintiff argues the R&R misinterprets the ALJ's step five finding regarding

Plaintiff's ability to perform work that exists in significant numbers in the national economy. (Doc. 21, p. 5; *see* Doc. 20, pp. 19–23.) Specifically, Plaintiff contends the Medical-Vocational Guidelines ("**Grids**") direct a finding of disabled because of her limitation to sedentary work, and substantial evidence does not support the ALJ's finding. (Doc. 21, p. 5.) The Commissioner responds that Plaintiff inappropriately asks the Court to reweigh the evidence and decide the facts anew. (Doc. 25, p. 5 (citing Doc. 20, p. 20).) On review, Plaintiff's Objection is overruled.

At step five of the sequential evaluation process, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, the ALJ found "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." (R. 25.) That decision was based on the testimony of the VE and consideration of Plaintiff's "age, education, work experience, and [RFC]." (R. 26.) The ALJ concluded Plaintiff was "not disabled." (R. 26.)

Plaintiff argues, as she did in her initial brief, that she should have been deemed disabled based on the Grids, and the ALJ's contrary finding lacks substantial evidentiary support. (Doc. 19, pp. 46–47; Doc. 21, p. 5.) Specifically, she states that "Grid rules 201.04 (sedentary) or 201.06 (sedentary), finds disabled an individual with [her] identical vocational factors." (Doc. 19, p. 46.) Plaintiff argues the ALJ's decision she could perform other work in the national economy was not supported by substantial evidence. (Doc. 21, p. 5.)

But Plaintiff's argument inappropriately invites the Court to find her disabled

under the Grids by deciding facts anew and reweighing the evidence. *See Dyer*, 395 F.3d at 1210 (explaining that when reviewing the Commissioner's decision the Court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." (citations omitted). And further, the Court finds substantial evidence existed to support the ALJ's conclusion that Plaintiff could perform other work in the national economy.

Although the ALJ must use the Grids to determine whether Plaintiff could perform other jobs that exist in the national economy, the ALJ cannot rely exclusively on the Grids when Plaintiff "is unable to perform a full range of work at a given residual functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (collecting cases). Here, the ALJ stated:

> Through the date last insured, if the claimant had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rule 203.15 and Rule 203.07. However, the claimant's ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, through the date last insured, the Administrative Law Judge asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as jobs:
>
> - Hospital Cleaner, DOT # 323.687-010, SVP 2, unskilled, medium exertion, 298,000 positions in the national economy;
> - Hand Packager, DOT # 920.587-018, SVP 2, unskilled, medium exertion, 217,000 positions in the national economy;
> - Laundry Worker I, DOT #361.687-018, SVP 2, unskilled, medium exertion, 321,000 positions in the national economy.

(R. 26.) It is clear the ALJ did not mechanically apply the Grids, but, correctly incorporated the VE's testimony to determine whether many jobs existed in the national

economy that Plaintiff could perform. The Court overrules Plaintiff's Objection to the finding she could perform work that exists in significant numbers in the national economy.

## IV. CONCLUSION

In conclusion, the Commissioner's Objection on the Dr. Zimmerman Recommendation is sustained and Plaintiff's Objection is overruled in its entirety. The Commissioner's final decision denying Plaintiff's claim for disability benefits is affirmed.

Accordingly, it is **ORDERED AND ADJUDGED** :

1. U.S. Magistrate Judge Daniel C. Irick's Report and Recommendation (Doc. 20) is **ADOPTED IN PART AND REJECTED IN PART:**

    a. The Dr. Zimmerman Recommendation and Footnote 9 Recommendation are **REJECTED**.

    b. In all other respects, the R&R is **ADOPTED, CONFIRMED**, and made a part of this Order.

2. U.S. Magistrate Judge Daniel C. Irick's Report and Recommendation (Doc. 27) is **ADOPTED, CONFIRMED**, and made a part of this Order.

3. Plaintiff's Objection to the Magistrate Judge's Report and Recommendation (Doc. 21) is **OVERRULED**.

4. The Commissioner's Objection to the Magistrate Judge's Report and Recommendation (Doc. 22) is **SUSTAINED**.

5. The Commissioner's final decision denying Plaintiff's claim for disabled social security benefits is **AFFIRMED**.

6. The Clerk is **DIRECTED** to:

   a. Enter judgment for Defendant Commissioner of Social Security and against Plaintiff Jane Jimenez; and

   b. Close this case.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 29, 2019.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record